IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Carolyn S. Shaffer, :

    Plaintiff, :

  v. : Case No. 2:11-cv-973

: JUDGE MICHAEL H. WATSON
Commissioner of Social Security, Magistrate Judge Kemp

    Defendant. :

REPORT AND RECOMMENDATION

## I. Introduction

Plaintiff, Carolyn S. Shaffer, filed this action seeking review of a decision of the Commissioner of Social Security denying her applications for disability insurance benefits and supplemental security income. Those applications were filed with protective filing dates of February 3, 2009 (disability) and January 20, 2009 (SSI) and alleged that plaintiff became disabled on October 28, 2008 due to back pain.

After initial administrative denials of her claim, plaintiff was given a video hearing before an Administrative Law Judge on November 3, 2010. In a decision dated February 2, 2011, the ALJ denied benefits. That became the Commissioner's final decision on September 19, 2011, when the Appeals Council denied review.

After plaintiff filed this case, the Commissioner filed the administrative record on January 9, 2012. Plaintiff filed her statement of specific errors on February 2, 2012. The Commissioner filed a response on April 9, 2012. No reply brief was filed, and the case is now ready to decide.

## II. The Lay Testimony at the Administrative Hearing

Plaintiff's testimony at the administrative hearing is found at pages 64 through 79 of the record. Plaintiff, who was 46 years old at the time of the hearing and is a high school

graduate, testified as follows.

Plaintiff last worked as an aide for mentally handicapped people. That job involved some lifting. Prior to that, she worked on the assembly line for a company that made car parts. She had also been a housekeeper in a nursing home and, before that, worked with handicapped men.

Plaintiff had experienced back problems for years, but the pain worsened after she fell at home in 2007. Now, she cannot lift anything which weighs more than five pounds, and it is hard for her to bend, kneel, or sit. She cannot turn or twist. She alternates between sitting and standing every fifteen minutes. She takes both Oxycontin and muscle relaxants for the pain. Neither injections nor physical therapy has helped the pain.

In addition to back problems, plaintiff has diabetes and a heart condition, high blood pressure, and high cholesterol. She takes medication for all of these conditions as well. She does try to walk every day and can usually walk up to fifteen minutes at a time. She can climb a short flight of steps by holding on to the railing.

On a daily basis, plaintiff's children do the household chores, but plaintiff will sometimes cook meals. She accompanies other family members on trips to the grocery store. She can shower without assistance. She has trouble sleeping at night, but is unable to nap during the day, although she will lie down and rest at times. She has her feet elevated about half the time.

### III. The Medical Records

The medical records in this case are found beginning on page 171 of the administrative record. The pertinent records can be summarized as follows.

Plaintiff underwent some cardiac testing due to reports of intermittent mild chest pain. On November 11, 2008, her

cardiologist reported some unusual aneruismal formation of the proximal portion of the circumflex artery. Treatment included aspirin and beta-blockers. (Tr. 207).

A radiology report concerning plaintiff's hip and lumbar spine, dated December 18, 2008, showed moderate degenerative disc disease at L4-5. No acute traumatic findings were noted. (Tr. 249). A subsequent MRI confirmed this finding and also revealed a lateral disc protrusion and narrowing of the spinal canal. (Tr. 251).

A state agency reviewing physician, Dr. McCloud, prepared a physical residual functional capacity assessment on March 13, 2009. The form indicated primary diagnoses of degenerative disc disease of the lumbar spine and obesity, and in the narrative portion of the form, her Body Mass Index (BMI) was reported as 36. Plaintiff was limited to light work with no ability to climb ladders, ropes or scaffolds, and only the occasional ability to climb stairs, stoop, kneel, crouch and crawl. Her self-reported limitations were found to be only partially credible. (Tr. 282-89). After plaintiff submitted new evidence of obstructive sleep apnea, another state reviewer, Dr. Hinzman, confirmed Dr. McCloud's assessment, also noting plaintiff's obesity (she was up to 195 pounds at one point), but also noting she had lost almost twenty pounds. (Tr. 377).

There are a number of notes in the record from plaintiff's family physician, Dr. Ullrich. They show, among other things, that plaintiff reported back pain, indicated that some medications either did not work or made her sick to the stomach, that she had problems sitting, and that she was walking for exercise, sometimes as much a four miles per day. She also reported pain and stiffness in her hips. Some of the notes show her weight as above 180 pounds (plaintiff is five feet tall).

Dr. Fleming saw plaintiff on February 25, 2009, about her

back pain.  She reported an increase of symptoms over the last
year, with back pain on the right side and hip and leg pain on
the left.  Her symptoms were worse when sitting or trying to rise
from a sitting position.  She was on medication but had not
undergone physical therapy or had injections.  Dr. Fleming
believed the cause of her complaints was the disc protrusion seen
at L4-5.  He related her hypertension, diabetes and elevated
cholesterol to her body mass.  During the examination, she was
able to sit comfortably without position changes, could bend
easily to remove her socks and shoes, and walked with a normal
gait.  Straight leg raising was negative and motor and sensory
exams were normal.  Dr. Fleming discussed the impact of
plaintiff's body mass on her back and other medical conditions,
and he recommended aggressive conservative treatment such as
physical therapy.  He thought surgery might be needed eventually.
(Tr. 319-21).

    Plaintiff saw Dr. Pearlman (who was recommended by Dr.
Fleming) on June 30, 2009, with the same complaints.  She did
tell Dr. Pearlman that Percocet had been helpful.  She exhibited
some mild tenderness in the low back and right thigh areas but
the examination was otherwise fairly normal.  The diagnoses
included lumbar disc degeneration, lumbago, and sacroiliac
bursitis.  He recommended injections and physical therapy.  (Tr.
-404).  A right SI bursal injection was done on July 9, 2009 but
plaintiff was only minimally responsive to that procedure.
Additional injections were given on July 30, 2009 which were
effective only for several hours.  Dr. Pearlman later did an EMG
study, which was normal, and he noted that a change in medication
to Neurontin had lessened plaintiff's pain.  She did report
occasional numbness in her feet.  Her symptoms did not change
much over the succeeding months but she had some increase in pain
as of May 14, 2010.  She had more injections and in July, 2010

reported good improvement, although in the past week the pain had increased again on bending, standing, twisting and turning. Another series of injections was ordered. (Tr. 378-404).

The remainder of the medical records consist of more notes from plaintiff's regular physician. They generally reflect continued complaints of back, hip and leg pain, with medications being somewhat helpful but also with some inconsistent results.

IV.   The Vocational Testimony

Ms. Kaufman, a vocational expert, also testified at the administrative hearing. Her testimony begins at page 79. She characterized plaintiff's past work as a case aide as light and semi-skilled. The assembly line job was medium and unskilled, as was the housekeeper job. Finally, the nurse's aide job is considered to be a medium semi-skilled job, although plaintiff performed it at the very heavy exertional level.

Ms. Kaufman was asked some questions about a hypothetical person who was 46 years old and had plaintiff's education and work experience. Additionally, that person could do only a limited range of light work and could only occasionally crouch, kneel, crawl, stoop, balance or climb stairs, and could never claim a ladder. Ms. Kaufman testified that such a person could do plaintiff's past job as an aide in a sheltered workshop and could also do a number of other light jobs, such as cashier, office helper, or light assembler. If the person were limited to a full range of sedentary work, he or she could perform jobs such as order clerk or sedentary assembler, and there would be about 1,600 such unskilled sedentary jobs in plaintiff's region of the state. Those jobs do require at least 30 minutes of continuous sitting, so that if someone needed to change positions every 15 minutes, the unskilled sedentary jobs to which Ms. Kaufman referred would not be available. Further, if the hypothetical person were limited in the way plaintiff testified, he or she

-5-

could not work.

### V. The Administrative Law Judge's Decision

The Administrative Law Judge's decision appears at pages 10 through 21 of the administrative record. The important findings in that decision are as follows.

The Administrative Law Judge found, first, that plaintiff met the insured requirements of the Social Security Act through December 31, 2010. Next, he found that plaintiff had not engaged in substantial gainful activity from her alleged onset date of October 28, 2008 through the date of the decision. As far as plaintiff's impairments are concerned, the ALJ found that plaintiff had severe impairments including severe chest pain related to a possible cardiac disease, degenerative disc disease, diabetes and sleep apnea. The ALJ also found that these impairments did not meet or equal the requirements of any section of the Listing of Impairments (20 C.F.R. Part 404, Subpart P, Appendix 1).

Moving to the next step of the sequential evaluation process, the ALJ found that plaintiff had the residual functional capacity to perform light work, with the ability to lift 20 pounds occasionally and ten pounds frequently, to sit, stand or walk for up to six hours each in a day, to crouch, kneel, crawl, stoop, climb stairs, or balance occasionally, and never to climb ladders. The ALJ accepted the vocational expert's testimony that someone with such limitations could perform one of plaintiff's past jobs as well as other light and sedentary jobs that existed in significant numbers in the regional economy. As a result, the ALJ concluded that plaintiff had not demonstrated an entitlement to benefits.

### VI. Plaintiff's Statement of Specific Errors

In her statement of specific errors, plaintiff raises the following issues. First, she argues that the ALJ erred in

failing to consider the fact that, for some period of time after she alleged disability, she had an additional severe impairment, namely obesity. Second, she argues that the ALJ did not give proper consideration to the opinion of her treating physician, Dr. Pearlman. The Court generally reviews the administrative decision under this legal standard:

    <u>Standard of Review.</u>  Under the provisions of 42 U.S.C. Section 405(g), "[t]he findings of the Secretary [now the Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'" <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Company v. NLRB</u>, 305 U.S. 197, 229 (1938)).  It is "'more than a mere scintilla.'" <u>Id</u>.  <u>LeMaster v. Weinberger</u>, 533 F.2d 337, 339 (6th Cir. 1976).  The Commissioner's findings of fact must be based upon the record as a whole.  <u>Harris v. Heckler</u>, 756 F.2d 431, 435 (6th Cir. 1985); <u>Houston v. Secretary</u>, 736 F.2d 365, 366 (6th Cir. 1984); <u>Fraley v. Secretary</u>, 733 F.2d 437, 439-440 (6th Cir. 1984).  In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" <u>Beavers v. Secretary of Health, Education and Welfare</u>, 577 F.2d 383, 387 (6th Cir. 1978) (quoting <u>Universal Camera Corp. v. NLRB</u>, 340 U.S. 474, 488 (1951)); <u>Wages v. Secretary of Health and Human Services</u>, 755 F.2d 495, 497 (6th Cir. 1985).  Even if this Court would reach contrary conclusions of fact, the Commissioner's decision must be affirmed so long as that determination is supported by substantial evidence. <u>Kinsella v. Schweiker</u>, 708 F.2d 1058, 1059 (6th Cir. 1983).

    Plaintiff argues first that the ALJ erred in not finding that her obesity, which existed for a significant period of time

-7-

after she alleged disability, was not a severe impairment. In support of that argument, she notes that under Social Security Ruling (SSR) 02-1p, the Commissioner has determined that a person with a BMI of 30 or above is considered to be obese, and that the Commissioner "will consider the individual to have obesity as long as his or her weight or BMI shows essentially a consistent pattern of obesity." That regulation also provides that "obesity is a 'severe' impairment when, alone or in combination with another medically determinable physical or mental impairment(s), it significantly limits an individual's physical or mental ability to do basic work activities." She concludes this argument by asserting that "the failure to consider obesity in the combination of impairments was an error that affected the weighing of Dr. Pearlman's opinion." Statement of Errors, Doc. 12, at 10.

The Court agrees that the ALJ should not have summarily rejected the notion that plaintiff's obesity was a severe impairment at some times relevant to her applications simply because that condition had resolved shortly before the administrative decision issued. The Commissioner's memorandum provides a detailed explanation of how the ALJ might have reconciled that decision with the dictates of SSR 02-1p, but that rationale is not contained within the administrative decision, and the Court is hesitant to attribute a reasoning process to the ALJ without evidence that he actually followed that process.

On the other hand, the Court is persuaded that any error committed by the ALJ is, in the context of this case, harmless. There is no evidence in the record that plaintiff's obesity impacted her ability to perform basic work activities in any way that differed from the impact of her back pain and the limitations she reported from that condition. Certainly, her obesity may have combined with her back condition to produce her

symptoms (although the fact that her back pain did not improve with weight loss seems to suggest otherwise), but the ALJ and the evaluating physicians clearly were aware of her obesity - it is mentioned specifically in the reviewing physicians' reports, on which the ALJ relied - and took into account any limitations caused by that condition in determining her physical residual functional capacity. See, e.g., Essary v. Comm'r of Social Security, 114 Fed. Appx. 662, *5 (6th Cir. October 28, 2004), citing Forte v. Barnhart, 377 F.3d 892, 896 (8th Cir. 2004)(finding no error in the ALJ's consideration of obesity where, as here, no treating source suggested that obesity "imposed any additional work-related limitations, and [the claimant] did not testify that ... obesity imposed additional restrictions"). Thus, there is no reasonable possibility of a different outcome if the ALJ were instructed to treat plaintiff's obesity as a severe impairment. See Rutherford v. Comm'r of Social Security, 67 Fed. Appx. 333, *1 (6th Cir. June 11, 2003)(an "error is harmless [if] the outcome of the case would not be different"). Plaintiff's first claim of error therefore provides no basis for reversal or remand.

Plaintiff's other argument is that the ALJ did not give good reasons for discounting the opinion of Dr. Pearlman, whose opinion was given "some weight," but not controlling weight. See Rogers v. Comm'r of Social Security, 486 F.3d 234, 242 (6th Cir. 2007). She asserts that the ALJ's refusal to credit his opinion in full because he is not a vocational expert runs contrary to Rogers and 20 C.F.R. §404.1527(d), and that the ALJ's reliance on statements in Dr. Pearlman's reports supporting a finding that plaintiff could work at some level was error because, according to plaintiff, one of those statements must have been made in error, and the other is not part of the administrative record. Plaintiff also faults the ALJ for relying on statements in the

medical records to the effect that she was, at times, able to walk four or five miles per day, noting that at other times she was not able to do so, and arguing that these statements provide no support for a finding that she could work at the light exertional level.

It has long been the law in social security disability cases that a treating physician's opinion is entitled to weight substantially greater than that of a nonexamining medical advisor or a physician who saw plaintiff only once.  20 C.F.R. §404.1527(d); see also Lashley v. Secretary of H.H.S., 708 F.2d 1048, 1054 (6th Cir. 1983); Estes v. Harris, 512 F.Supp. 1106, 1113 (S.D. Ohio 1981).  However, in evaluating a treating physician's opinion, the Commissioner may consider the extent to which that physician's own objective findings support or contradict that opinion.  Moon v. Sullivan, 923 F.2d 1175 (6th Cir. 1990); Loy v. Secretary of HHS, 901 F.2d 1306 (6th Cir. 1990).  The Commissioner may also evaluate other objective medical evidence, including the results of tests or examinations performed by non-treating medical sources, and may consider the claimant's activities of daily living.  Cutlip v. Secretary of HHS, 25 F.3d 284 (6th Cir. 1994).  No matter how the issue of the weight to be given to a treating physician's opinion is finally resolved, the ALJ is required to provide a reasoned explanation so that both the claimant and a reviewing Court can determine why the opinion was rejected (if it was) and whether the ALJ considered only appropriate factors in making that decision. Wilson v. Comm'r of Social Security, 378 F.3d 541, 544 (6th Cir. 2004).

The Commissioner concedes that Dr. Pearlman did not, as the ALJ stated, say that plaintiff could do sedentary work.  However, the Commissioner correctly points out that Dr. Pearlman also never stated that plaintiff was disabled or that she was limited

to activities inconsistent with the ability to do either light or sedentary work. Thus, there really was no opinion of disability for the ALJ to consider and, if necessary and appropriate, discount in order to find that plaintiff could perform substantial gainful activity. The Commissioner is also correct that the ALJ limited plaintiff to doing light work which required either sitting for up to six hours with normal breaks, or standing for that period of time; there was no finding that she could walk long distances or for an extended period of time. Further, the ALJ did not simply rely on isolated statements in the record about plaintiff's ability to walk as the basis for his findings. Rather, he used those statements to show that plaintiff's testimony of very substantial limitations was inconsistent with those entries, so that he discounted her testimony to some degree, and he gave significant weight to the opinions of Drs. McCloud and Hinzman, both of whom believed that plaintiff could do a range of light work. Even if Dr. Pearlman's notes could be read as expressing some level of limitations above and beyond those identified by Drs. McCloud and Hinzman (and the ALJ suggested that he read Dr. Pearlman's notes that way, see Tr. 19), and even if plaintiff were limited solely to sedentary work, the vocational expert identified some unskilled sedentary jobs that plaintiff could do. The Court therefore finds that the ALJ did not expressly disregard any opinion about disability expressed by a treating source - there were simply no such opinions in this record - and that he articulated good reasons for giving significant weight to the opinions of Drs. McCloud and Hinzman. Consequently, there is also no merit in plaintiff's second assignment of error.

VII. Recommended Decision

Based on the above discussion, it is recommended that the plaintiff's statement of errors be overruled and that judgment be

entered in favor of the defendant Commissioner of Social Security.

### VIII. Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

/s/ Terence P. Kemp
United States Magistrate Judge